NOT FOR PUBLICATION

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

|  |  |  |
|---|---|---|
| SCOTT J. MARTELL, | : | |
| Plaintiff, | : | Civil No. 14-1530 (RBK) |
| v. | : | **OPINION** |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | : | |
| Defendant. | : | |

**KUGLER**, United States District Judge:

This matter comes before the Court on an appeal filed by Plaintiff Scott J. Martell ("Plaintiff") from the decision of the Acting Commissioner of Social Security, Carolyn W. Colvin (the "Commissioner"), denying Plaintiff Supplemental Security Income benefits ("SSI") under Title XVI of the Social Security Act (the "Act"). The Court has jurisdiction to decide this appeal pursuant to Section 205(g) of the Act, 42 U.S.C. § 405(g). For the reasons expressed herein, the Court will affirm the Commissioner's decision.

**I.   BACKGROUND**

Plaintiff protectively filed a Title XVI application for SSI on April 2, 2011, alleging disability as of December 30, 2004. Tr. 205. Plaintiff's claim was initially denied on November 2, 2011, Tr. 145, and then denied again at reconsideration on December 14, 2011, Tr. 153. A hearing was held before Administrative Law Judge ("ALJ") Frederick Timm on October 18, 2012, at which Plaintiff and a vocational expert ("VE") testified. Tr. 31-81. The ALJ issued an unfavorable decision on December 28, 2012. Tr. 14. Plaintiff requested review by the Appeals

1

Council on February 14, 2013, Tr. 7, which denied review on February 19, 2014.  Tr. 1.  Following that action, the instant suit was filed.  Doc. No. 1.  At the time of the ALJ's decision, Plaintiff was 49 years old.  Tr. 25.  Plaintiff has a GED.  Tr. 209.  Plaintiff has past relevant work as a truck driver from 1993 to 2004.  Id.

### A. Plaintiff's Physical and Mental Conditions and Medical History

Plaintiff alleges disability caused by diabetes, hypertension, high cholesterol, radiculopathy, history of spinal fusion, anxiety, and depression.  Tr. 208.  The Court describes his impairments to the extent necessary for this Opinion.

#### 1. Plaintiff's Back and Neck Conditions

Plaintiff underwent a spinal fusion with a laminectomy in 2004.  Tr. 48.  Between June 2010 and June 2011, Plaintiff saw Dr. John Gurrieri for primary care.  Tr. 262-300.  Dr. Gurrieri provided medication management once a month to treat Plaintiff's back pain, hypertension, hyperlipidemia, and diabetes.  Id.  In July 2010, Dr. Gurrieri prescribed Percocet for Plaintiff's back pain and prescribed the same dosage each month from November 2010 through June 2011.  Tr. 264, 267, 270, 273, 276, 279, 282, 288, 295.  Between July 2011 and August 2012, Plaintiff saw Dr. Maria Kent for primary care.  Tr. 348-419.  Dr. Kent continued to prescribe Plaintiff the same dosage of Percocet for back and neck pain through May 2012.  Tr. 348-359, 364-378, 380-382, 401-419.  In June 2012, Dr. Kent switched Plaintiff to an extended release Oxycontin because "the state wants him to be switched to an extended release for pain control."  Tr. 357, 359.  During some of Plaintiff's monthly visits over this two year period, Drs. Gurrieri and Kent sporadically noted "lower back pain" or "chronic pain" under the heading "History of Present Illness."  Tr. 271, 277, 299, 348, 357, 373, 376, 380.  Plaintiff's medical records during this time also occasionally indicated "lower back sprain," "backache," or "chronic pain," under the

2

heading of "Assessment." Tr. 276, 279, 282, 288, 419. Dr. Gurrieri's reports consistently noted no neck pain or stiffness, no localized joint pain or joint stiffness, and a normal gait and stance, Tr. 263-64, 266-67, 269-70, 272-73, 275-76, 278-79, 281-83, 286-87, 289-91, 293-94, 296, 299, while Dr. Kent's reports consistently noted that Plaintiff had pain in his back and neck at a level of seven out of ten, Tr. 349, 352, 358, 365, 370, 374, 377, 381, 401, 405 (6 out of 10). Plaintiff also complained periodically to Dr. Kent of additional neck pain. Tr. 380, 414. A January 2012 procedure showed some degenerative changes to Plaintiff's neck, Tr. 379, but it is not clear from the record that any action was taken based upon this finding.

At the hearing before the ALJ, when asked "[w]hat stops you from working?" Plaintiff responded "[p]ain in my back, my legs, and depression." Tr. 51. Plaintiff testified that his back pain causes problems bending, lifting, twisting, walking, and standing, Tr. 48, but that "[t]here's really not a whole lot they can do for [the back pain]." Tr. 49. He also complained that he has a limp on his right side. Tr. 53. Plaintiff testified that he cannot sit comfortably in a chair for more than 20 minutes because his diabetes causes his legs and feet to go numb. Tr. 52.

### 2. Plaintiff's Mental Impairments

Between July 2010 and June 2011, Dr. Gurrieri provided medication management to treat Plaintiff's complaints of depression and anxiety. Tr. 262-295. In August 2010, Plaintiff was referred to NewPoint Behavioral Health Care and was diagnosed with a mood disorder that was believed to be caused by his chronic pain. Tr. 330. At this time, he was assigned a global assessment functioning ("GAF") score of 50. Id. In September 2010, Plaintiff complained of sleep problems and depression, Tr. 322, and was diagnosed with depression, mood disorder, and chronic insomnia, Tr. 324. In October 2010, Plaintiff also presented with "anger" problems and "anxiety w/panic attacks." Tr. 316. At this time, his GAF score increased to 55. Tr. 321.

3

In October 2011, Dr. Lawrence Mintzer, a licensed psychologist, performed a consultative examination of Plaintiff. Tr. 303-07. Dr. Mintzer assigned Plaintiff a GAF score of 55, and stated that his limitations were "moderate to severe." Tr. 307. Dr. Mintzer characterized Plaintiff's recent memory as "fair to poor," and his immediate retention and recall as "poor." Tr. 306. His concentration was "fairly good." Id. In terms of his interaction with people, Dr. Mintzer noted that "[h]e usually gets along fairly well with other people," Tr. 304, but Plaintiff commented that he stays away from people, has no friends, and does not see any family members. Tr. 305. At the hearing before the ALJ, Plaintiff testified that he does not have any friends because "[n]obody wants to be around me." Tr. 58. Plaintiff testified that his "attention span is like gone, lost." Tr. 57. He said that he could not perform a job such as a security guard that required him to focus on a TV for eight hours "[b]ecause of my concentration level." Tr. 60. However, he was never diagnosed with ADD or ADHD. Tr. 61. Plaintiff testified that he is depressed, Tr. 47, and that he cannot work because of his depression, Tr. 51.

In August 2012, Plaintiff began outpatient methadone treatment for opiate dependence. Tr. 343. On his psychological intake report, Plaintiff exhibited withdrawal symptoms, including insomnia, irritability, cramps, soreness in joints, flu-like symptoms, nausea, clammy, sweaty skin, and emotional mood swings. Tr. 347. Prior to entering the program, Plaintiff had used heroin. Tr. 43. As of October 2012, Plaintiff continued to receive 100 mg of methadone daily as well as weekly group and/or individual sessions. Tr. 343.

## II.   LEGAL STANDARDS

### A. Standard of Review of Commissioner's Decision

District court review of the Commissioner's final decision is limited to ascertaining whether the decision is supported by substantial evidence. Hartranft v. Apfel, 181 F.3d 358, 360

(3d Cir. 1999) (citing 42 U.S.C. § 405(g)). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Morales v. Apfel, 225 F.3d 310, 316 (3d Cir. 2000) (quoting Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999)). If the Commissioner's determination is supported by substantial evidence, the Court may not set aside the decision, even if the Court "would have decided the factual inquiry differently." Fargnoli v. Masanari, 247 F.3d 34, 38 (3d Cir. 2001) (citing Hartranft, 181 F.3d at 360). A district court may not weigh the evidence "or substitute its conclusions for those of the fact-finder." Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992).

Nevertheless, the reviewing court must be wary of treating "the existence vel non of substantial evidence as merely a quantitative exercise" or as "a talismanic or self-executing formula for adjudication." Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham.") The Court must set aside the Commissioner's decision if the Commissioner did not take into account the entire record or failed to resolve an evidentiary conflict. Schoenwolf v. Callahan, 972 F. Supp. 277, 284-85 (D.N.J. 1997) ("Unless the [Commissioner] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.") (quoting Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978)). Furthermore, evidence is not substantial if it constitutes "not evidence but mere conclusion," or if the ALJ "ignores, or fails to

resolve, a conflict created by countervailing evidence." Wallace v. Sec'y of Health & Human Servs., 722 F.2d 1150, 1153 (3d Cir. 1983) (citing Kent, 710 F.2d at 114).

### B. The Five-Step Disability Inquiry

The Commissioner conducts a five-step inquiry to determine whether a claimant is disabled, and therefore eligible for SSI benefits. 20 C.F.R. § 404.1520(a)(4); Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004). The Commissioner first evaluates whether the claimant is currently engaging in any "substantial gainful activity." 20 C.F.R. § 404.1520(b). Such work activity bars the receipt of benefits. Id. The Commissioner then ascertains whether the claimant is suffering from a severe impairment, meaning "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). If the claimant does not have such a severe impairment that limits his ability to do basic work activities, the claim will be denied. Id. If the Commissioner finds that the claimant's condition is severe, the Commissioner moves to the third step and determines whether the impairment meets or equals the severity of a listed impairment. 20 C.F.R. § 404.1520(d). If the condition is equivalent to a listed impairment, then it is presumed that the claimant is entitled to benefits; if not, the Commissioner continues to step four to evaluate the claimant's residual functional capacity ("RFC") and analyze whether the RFC would enable the claimant to return to his "past relevant work." 20 C.F.R. § 404.1520(f). If the Commissioner finds the claimant unable to resume past relevant work, in the fifth and final step, the Commissioner determines whether the claimant can adjust to other work. 20 C.F.R. § 404.1520(g). If the claimant has the capacity to perform other work available in significant numbers in the national economy, based upon factors such as the claimant's age, education and

work experience, the claimant will be found not disabled.  Id.  If the claimant cannot make an adjustment to other work, he will be found to be disabled.  Id.

### III. DISCUSSION

#### A. The ALJ's Decision

The ALJ determined that Plaintiff was not disabled under section 1614(a)(3)(A) of the Act.  Tr. 26.  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the April 2, 2011 application date.  Tr. 19.  At step two, the ALJ found that the following impairments were severe: status post lumbar spinal fusion, degenerative disc disease of the cervical spine, diabetes mellitus, hypertension, obesity, bi-polar disorder, personality disorder and polysubstance abuse.  Id.  At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or equaled the severity of a listed impairment in 20 C.F.R. Part 404, Subpart P., Appendix 1.  Id.  The ALJ then concluded that Plaintiff could no longer perform any past relevant work.  Tr. 24.  The ALJ found that Plaintiff had the RFC to perform less than a full range of sedentary work.  Tr. 21.  Specifically, he found that Plaintiff "can never climb ladders, ropes or scaffolds; he can occasionally climb ramps and stairs and occasionally bend, balance, stoop, kneel, crouch or crawl.  [Plaintiff] can perform unskilled work that is goal-oriented rather than production-paced.  He cannot interact with the public and can occasionally interact with supervisors and co-workers."  Id.

The ALJ concluded that Plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms were not credible to the extent that they were inconsistent with the RFC assessment.  Tr. 22.  In making this credibility determination, the ALJ emphasized the treatment notes from Dr. Gurrieri that indicated a normal gait and stance, and no localized joint pain or stiffness.  Id.  The ALJ also relied heavily on the treatment notes from June 2010 to

August 2012 that showed the history of Plaintiff's prescription medications and determined that Plaintiff's prescribed medication was effective in treating his neck and back pain.  Id. Addressing Plaintiff's limitations due to his mental impairments, the ALJ concluded that "the limitations in the residual functional capacity assessment . . . adequately address [Plaintiff's] mental limitations."  Tr. 24.

At Step Five, the ALJ determined that there are jobs that exist in significant numbers in the national economy that Plaintiff could perform given his age, education, work experience, and RFC.  Tr. 25.  The ALJ relied on testimony of the VE, who stated that Plaintiff would be able to perform two jobs: laminator, with 1,740 jobs regionally and 66,330 jobs nationally, and carding machine operator, with 320 jobs regionally and 274,000[1] jobs nationally.  Tr. 25-26.  The ALJ determined that the VE's testimony is consistent with the information contained in the Dictionary of Occupational Titles ("DOT").  Thus, the ALJ found that Plaintiff was not disabled.

**B. Analysis**

Plaintiff raises two arguments in support of his appeal.  First, Plaintiff contends that the ALJ's decision to discount limitations that arise secondary to Plaintiff's pain disorder was not supported by substantial evidence, and thus neither was the RFC determination.  Pl.'s Br. 11-15. Second, Plaintiff argues that the ALJ's determination that alternative jobs that Plaintiff can perform exist in significant numbers in the national economy was not supported by substantial evidence.  Pl.'s Br. 15-25.  For the reasons discussed below, both of Plaintiff's arguments fail.

> **1. The ALJ's determination as to Plaintiff's credibility was supported by substantial evidence.**

---

[1] The VE initially testified that there were 274,000 carding machine operator jobs in the national economy, but later corrected her testimony to reveal that there are only 27,400 such jobs in the national economy.  Tr. 73.  Despite her correction on the record, the ALJ relied upon the larger number in his decision.  Tr. 26.

Credibility assessments involve a two-step process. First, the ALJ must determine whether there is an underlying medically determinable impairment that could reasonably be expected to produce the plaintiff's symptoms. 20 C.F.R. § 416.929(b). If such an impairment is found, the ALJ must next evaluate the intensity, persistence, and limiting effects of the plaintiff's symptoms to determine the extent that they limit the plaintiff's ability to do basic work activities. 20 C.F.R. § 416.929(c). In evaluating the intensity, persistence, and limiting effects, the ALJ must consider all of the available evidence. Id. Whenever statements about the intensity, persistence, or functionally limiting effects of symptoms are not substantiated by objective medical evidence, the ALJ must make a finding on the credibility of the statements based on a consideration of the entire case record. 20 C.F.R. § 416.929(c)(4). The ALJ "can reject such claims if he does not find them credible." Schaudeck v. Comm'r of Soc. Sec. Admin., 181 F.3d 429, 433 (3d Cir. 1999.) A reviewing court should defer to an ALJ's credibility determination, especially where he has the opportunity at a hearing to assess a witness's demeanor. Reefer v. Barnhart, 326 F.3d 376, 380 (3d Cir. 2003).

Plaintiff suggests that the ALJ's determination as to Plaintiff's credibility was based on "a handful of notes" in the record that Plaintiff did not have a limp or any localized joint pain, ignoring the records where pain and a limp was found. Pl.'s Br. 12. But the records the ALJ relies upon in his opinion consist of an entire year of Plaintiff's treatment with Dr. Gurrieri, and not just occasional notations. Ironically, the only record Plaintiff points to indicating evidence to the contrary is a single note made by Dr. Mintzer, a psychologist performing a consultative exam, that Plaintiff "walked with somewhat of a limp." Id.; Tr. 306. While it is true that Plaintiff's treatment notes from Dr. Kent regularly indicated that he had pain in his back and neck, and Plaintiff testified that he experienced pain, the ALJ resolved this evidentiary conflict

9

by reviewing the treating records as a whole.  The Third Circuit instructs that when complaints of pain are supported by medical evidence, they should be given great weight.  Ferguson v. Schweiker, 765 F.2d 31, 37 (3d Cir. 1985) (citing Taybron v. Harris, 667 F.2d 412, 415 n.6 (3d Cir. 1981)).  However, this Court finds that the medical records in this case do not support Plaintiff's testimony that his pain prevents him from working.  See Welch v. Heckler, 808 F.2d 264, 270 (3d Cir. 1986) (finding that subjective complaints of pain do not necessarily prevent a plaintiff from engaging in work and thus do not dictate a finding of disabled where plaintiff's complaints only support moderate as opposed to severe and disabling pain).

The ALJ's main issue with Plaintiff's credibility appears to be the fact that his pain medication was not increased during the course of his treatment.  The record reveals that Dr. Gurrieri prescribed Percocet to Plaintiff in July 2010, and prescribed the same dosage through June 2011.  From July 2011 to June 2012, Dr. Kent continued to prescribe the same dosage of Percocet for Plaintiff's back pain.  Significantly, Dr. Kent only altered Plaintiff's medication in June 2012 when Plaintiff indicated that the state wanted him to switch to an extended release.  Dr. Kent noted that she would do so "even though we have had his pain controlled at this dose for a while."[2] Tr. 357.  In evaluating symptoms including pain, the regulations provide that the ALJ consider the type, dosage, and effectiveness of any medication taken to alleviate the pain.  20 C.F.R. § 416.929(c)(3); see also Phillips v. Barnhart, 91 Fed. App'x 775, 781 (3d Cir. 2004); SSR 96-7p, 1996 WL 374186, at *7 (1996) ("Persistent attempts by the individual to obtain relief of pain or other symptoms, such as by increasing medications, trials of a variety of treatment modalities…referrals to specialists, or changing treatment sources…generally lend

---

[2] Plaintiff contends in his brief that he was also on methadone, and that was why his Percocet was not increased. However, the record reveals only that he began taking methadone in August 2012, just two months before the hearing date. Tr. 343.

10

support to an individual's allegations of intense and persistent symptoms.") (emphasis added). Plaintiff did not seek additional medication or any other course of treatment for his pain. Although Plaintiff's treatment records indicate that he experienced chronic pain, the ALJ's finding that Plaintiff's pain was controlled by his prescription medications is supported by substantial evidence.  Thus, the ALJ did not err in determining that Plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms were not credible.[3]

Plaintiff also contends that the RFC as it relates to his mental conditions is not supported by substantial evidence, because it does not take into account any limitation on maintaining attention or concentration.  Pl.'s Br. 14.  However, this Court finds that the part of the RFC that restricts him to "goal-oriented rather than production-paced" work addresses precisely this limitation, based on the VE's description of the terms.  See Tr. 70.  Plus, the only record evidence that Plaintiff was deficient in these areas is the consultative examination report by Dr. Mintzer, which states that Plaintiff's recent memory was fair to poor, and his immediate retention and recall were poor.  The same report indicates that Plaintiff's concentration was fairly good.  Furthermore, The ALJ thoroughly discussed Plaintiff's history of mental diagnoses in his opinion.  The ALJ emphasized Plaintiff's GAF score of 55, which indicates only moderate difficulty in social, occupational, or school functioning.  Tr. 23.  Finally, the record indicates that

---

[3] The ALJ includes two other rationales for making his credibility determination as it relates to Plaintiff's pain, which the Court will address for the sake of completeness.  First, Plaintiff reported that he did not work in 2009 because of the economy, indicating that Plaintiff was not consistent in his belief that his impairments were disabling. Tr. 22.  However, the ALJ relied on a note from a psychiatric evaluation at New Point Behavioral Health Care that actually says "He's been depressed 3 months after he got out of prison but it didn't work out because of the economy."  Tr. 322.  It is unclear that this note actually means that Plaintiff did not work due to the economy. Second, the ALJ noted that Plaintiff never began pain management despite Dr. Gurrieri's recommendation to do so in November 2010.  Tr. 22.  The only evidence in the record indicating that Plaintiff should start pain management was a single note made by Dr. Gurrieri which stated in full "needs pain management."  Tr. 282.  The record does not indicate that Plaintiff was instructed to pursue pain management or that he rejected pain management.  The Court agrees that it was improper for the ALJ to rely on these two notes to make his determination regarding Plaintiff's credibility.  Nonetheless, considering the other bases for the ALJ's decision discussed above, the Court finds that the ALJ's conclusion was based on substantial evidence.

the psychological symptoms Plaintiff exhibited when he began methadone treatment in August 2012 were attributable to withdrawal. Thus, this Court finds that the ALJ's determination that the RFC adequately addresses the Plaintiff's mental limitations is supported by substantial evidence.

### 2. The ALJ's decision at step five was based on substantial evidence.

At step five, the Commissioner bears the burden of proof to show that the plaintiff can perform alternative work that exists in significant numbers in the national economy given his age, education, past work experience, and RFC. 20 C.F.R. §§ 404.1520(g), 404.1560(c); Sykes v. Apfel, 228 F.3d 259, 263 (3d Cir. 2000). The Commissioner meets this burden when she identifies at least one occupation in the national economy that the plaintiff can perform. Wright v. Sullivan, 900 F.2d 675, 679 (3d Cir. 1990) (citing 20 C.F.R. § 404.1566). "An 'occupation' refers to a grouping of numerous individual 'jobs' with similar duties. Within occupations . . . there may be variations among jobs performed for different employers. . . ." SSR 96-9P, 1996 WL 374185, at *3 n.4 (July 2, 1996).

At the hearing, the ALJ posed a hypothetical to the VE, asking her to assume an individual of Plaintiff's age, education level, and past relevant work who

> is capable of light exertion generally, but never to climb a ladder, rope, scaffold. Other postural maneuvers are occasional. And in the mental domain, this individual is limited to unskilled tasks, is limited to goal-oriented, rather than production-paced tasks. No significant interaction with the general public. No more than occasional interaction with supervisors and co-workers.

Tr. 66-67. At the sedentary exertional level, based on the DOT, the VE identified the positions of laminator, with 66,330 jobs nationally and 1,740 regionally, and carding machine operator, with 27,400 jobs nationally and 320 jobs regionally.[4] Tr. 68-69, 73. When questioned further,

---

[4] The VE first testified that there were 274,000 jobs of carding machine operator nationally, but later corrected herself to indicate that there were only 27,400 such jobs nationally. Tr. 73. See supra note 1.

12

the VE revealed that her testimony as to the number of jobs available in the economy for carding machine operator was actually the total number of jobs in the Standard Occupational Classification ("SOC") category for the textile industry, which included 73 different jobs of which carding machine operator was just one. Tr. 72-73. The VE clarified that you would have to divide the total number of jobs by 73 to determine how many carding machine operator jobs there are in the national economy, and that she did not know how many individual jobs there were. Tr. 74.

Plaintiff argues that because the VE used the SOC to provide the statistical data on the number of jobs available in the national economy for laminator and carding machine operator, the VE did not present any evidence of the actual number of jobs that exist that Plaintiff could perform, and thus the Commissioner failed to meet her burden. The regulations provide that "[w]hen we determine that unskilled, sedentary, light, and medium jobs exist in the national economy . . . we will take administrative notice of reliable job information available from various governmental and other publications." 20 C.F.R. § 404.1566(d). Though not specifically listed, this Court finds that the SOC qualifies as "reliable job information available from various governmental and other publications." See McKinnon v. Comm'r of Soc. Sec., No. 12-4717, 2013 WL 5410696, at *5 (D.N.J. Sept. 26, 2013). The VE therefore properly relied upon the SOC for the statistical data for the jobs of carding machine operator[5] and laminator. Moreover, the VE did not testify as to the broader SOC category under which the laminator position falls. Thus, even if the Court were to agree that the Commissioner did not meet her

---

[5] Even though the ALJ mistakenly cited the VE's original number of 274,000 in his opinion, because the corrected number of 27,400 jobs in the national economy is significant, the Court finds that error to be harmless. See Curtis v. Sullivan, 808 F. Supp. 917, 926 (D.N.H. 1992) ("The judicial officer determines what constitutes a significant number of jobs.")

13

burden of proof as to the number of carding machine operator jobs available, the ALJ met its burden by relying on the VE's testimony regarding the number of laminator jobs available in the national economy.

Furthermore, Plaintiff argues that the VE had at best a muddled understanding of the difference between "goal-oriented" and "production-paced" work, rendering the ALJ's reliance on her testimony in error.  At the hearing, the VE explained that production-paced work involves a job where you complete a task in order for it to move to the next employee, such as an assembly line worker.  Tr. 70.  She described goal-oriented as more independent, where "you're given a job to do, and you just perform that."  Id.  The VE characterized the job of carding machine operator as "repetitive, short cycle" work, which was not an assembly line position but rather tending to a machine on your own.  Tr. 71.  She testified that a carding machine operator is production-paced in terms of how many you have to do, but not in terms of having to move the work on to another person.  Tr. 71-72.  The Court finds Plaintiff's argument without merit.  The fact that a job can have both production-paced and goal-oriented qualities does not render the VE's understanding of the difference in terms misguided.  The VE was able to articulate the difference between production-paced and goal-oriented work.  Moreover, there was no reason for the ALJ not to rely on the VE's categorization of laminator as goal-oriented, as the VE was not questioned about this job at the hearing.

## IV.   CONCLUSION

For the foregoing reasons, the Court finds that the ALJ's determination as to Plaintiff's credibility and his finding at step five were supported by substantial evidence.  The Commissioner's final decision is **AFFIRMED**.  An appropriate order shall issue.

Dated: 3/24/2015                  s/Robert B. Kugler
                                                       ROBERT B. KUGLER
                                                       United States District Judge